Okay, Mr Robinson. Yes. Proceed. Thank you, Your Honor. Good morning. May it please the Court. I am Brent Robinson for Plaintiff Nicholas Brown, Plaintiff and Appellant, I should say. With the Court's leave, I would reserve five minutes of my time for rebuttal. Your Honor, I think the briefing has adequately addressed the detailed pleading and legal issues in this case, and so with permission, I would bring the Court back to a higher level view and focus its attention on what I think is the central question undergirding this case. Whether Mr. Brown has plausibly alleged that Brita's failure to warn about the limits of its filtration system is likely to deceive a reasonable consumer. Because this case, unlike the case involving Moore v. Trader Joe's, which I didn't realize we're going to talk about so much today, but unlike that case, which involves specialized allegations around Mannequin Honey, which only really makes sense in context for somebody who knows the honey market. But counsel, doesn't Brita provide a performance data sheet? And how is that not enough information for someone to look at and say, oh, you know, there's some stuff it just doesn't fully clean out of my water? Yeah, Your Honor, for a few reasons. First, it's hidden behind a QR code, and it's unreasonable and unlikely, and we've been alleged that only 7 to 11 percent of consumers would even look at a back label, let alone for a $17 filter without their phones in check in internet research. But California law is also clear that it's not required. Consumers are not required to clarify representations made by looking to back labels or other sources. And also, those data sheets don't disclose what the product doesn't do, which is the issue here. The issue here, this is a complete omission case, a failure to disclose information that is necessary to avoid misleading a reasonable consumer. What, counsel, what would lead a reasonable consumer to think that the Brita product would eliminate all contaminants? That's exactly it. The label says reduce. Reduce doesn't mean remove altogether. That's true, Your Honor, and I don't dispute the English language aspect of that, the definitional notion of remove versus reduce. But that's exactly what I want to focus on today, because unlike the consumers who might know that for honeys, they're not going to just eat off of manica flowers and bring their nectar to the hive, right, because bees be bees. But with these consumers, Mr. Brown has alleged that he is unexperienced, untrained, and uneducated in water filtration technologies, and that's going to be true for the consumers that he would represent in this case. So the knowledge that these consumers have about tap water and filtration needs comes from our collective experience, so to speak. So, for example, consumers know from, perhaps as children having watched at this point, Aaron Brockovich, they know that hexavalent chromium through industrial applications may risk leakage into the water tables and then thus into the tap water supplies. They know from recent events in the last decade in Detroit and elsewhere that lead pipes, old lead pipes in municipal water distribution systems can cause lead to seep into tap water and cause lead poisoning in children especially. That would be the problem with the piping and the distributor, not British filtration, right? That is true at the first step, Your Honor, but what I'm talking about is the reasonable expectations of consumers. And Mr. Brown has alleged with specificity about his tap water in Los Angeles a large number of what are in fact common contaminants in tap water across our country, but specifically that are present in his tap water, including hexavalent chromium, including arsenic, including nitrate and nitrite, all of which are present in levels that far exceed established recognized guidelines for safe consumption. So, counsel, I'm with you in that, you know, people are now a little bit more aware given everything that's happened, Aaron Brockovich, everything in Detroit. I'm from the Central Valley. We have a lot of water issues there, but I'm not following them not understanding the difference between reduce and remove. Well, Your Honor, it doesn't even get to the label yet because what I'm describing is a consumer who is concerned about the health implications for their tap water and then they look for a solution and they see the Brita filter, which is identified as a filter for tap water. But it's not saying it's a solution to all water problems. It's saying we will reduce. We're not removing. We're not going to say, hey, at the end of the day, you're going to have safe, clean, free of everything tap water. You're going to have tap water that may be reduced, you know, with certain chemicals in it. That's true, Your Honor, but it says reduce these chemicals and more. It says three times contaminants. And so the impression that a reasonable consumer might have going into this, and we think that we've plausibly alleged this, is that this is a tool to filter tap water to remove what I would expect are the risks present in my tap water. And it's not clear from the label that it's not going to do that. And so we need a warning. What is clear is that Mr. Brown has alleged he bought this filter, his filters, because he wanted to protect his health. And the filter says it would make tap water, specifically, healthier and cleaner. And he assumed, as we suggest a reasonable consumer would, that that means that this filter is going to protect against what is commonly seen in tap water. It doesn't do that, and it concedes that they knew that it doesn't do that. And that, of course, is obvious, I think, in some level, based on any number of things. But putting aside that, the labels are what's important here. Well, is it true that the Brita filter eliminates some hazardous materials or reduces the overall quantity of the toxins in the water in LA? Yes, Your Honor, it does, but only for the specific ones that it is designed to remove. And that's where the deception comes into play, because the consumer is not going to know, just based on the information that's immediately available to them at the time of purchasing decision, that what the limitations are on this product. And the reason I acknowledge that, at face value, this seems like a much closer case, until you consider the perspective of the reasonable consumer and what they are trying to do to the problem that they are trying to solve. Because this product, it is undisputed, does not solve that problem. It solves some problems, and if you get into the technical details and the QR code and the back of the package and then go hunting, you realize that the filtering going on here is just a drop in the proverbial bucket. Compare the situation, though, with the parade of horribles that Brita referenced in its answering brief. N95 masks don't have a warning, they say, that this doesn't solve all of your ills. But in fact, it does. It's filtered in a name. It only filters N95, by its very title, only filters 95% of airborne particulates. So that warning about the limitations of efficacy are right there on the label, and to address the reasonable expectations consumers might otherwise have. Same thing with sunscreen. An SPF factor literally discloses the extent to which that product will shield you from the harmful radiation emitted by the sun. So in 80... What would you have Brita do on its label? What would you modify? I would have them place a warning on their label about the limits of their filtration technology and specifically tell consumers, warning, this product does not reduce or remove common contaminants present in tap water. All contaminants present in tap water. So the consumers know... It does reduce, doesn't it? It reduces some. It reduces the ones that, again, are stashed away in the QR code slash report you can access through its website. But it doesn't reduce all. And that's the key thing here, because these consumers are faced with an environment that is increasingly imperiled. I mean, we're seeing news reports every single day. The reality is, is that microplastics, forever chemicals, we're learning that those are everywhere and everything, and including us, and more importantly, they're in our tap water, which is an increasing threat, not only to our children. In your mind, would it be sufficient for Brita to say they don't reduce every contaminant in drinking water? Or do they specifically have to say, we don't reduce microplastics, we don't reduce some other things, but by name? What is sufficient? I think it would be sufficient to say that they don't reduce or remove common contaminants, hazardous contaminants present in tap water. I think it's not necessary to get into the weeds to that full extent, although I think the appropriateness of an appropriate remedy might be something appropriately subject to discovery, frankly. I think we've alleged it broadly. But I think the key here is, the question is whether we've plausibly alleged consumer deception. And I think based on what a reasonable consumer would know and understand about the threats that they face and what this product appears to do for them, based on just representations on the label, I think we have plausibly alleged that Brita has a duty to disclose the limits of its filtration technology in order to avoid deceiving consumers. And so for those reasons, Your Honor, we would respectfully urge the court to reverse the district court's order dismissing this case and remand for further proceedings so that Mr. Brown's allegations, his plausible claims of consumer deception, can undergo the rigors of discovery, class certification, and a trial in front of a jury of his peers so they can weigh these materiality issues. All right. Thank you, counsel. Thank you, Your Honors. Good morning. May it please the court. Jonah Nobler of Patterson Belknap for Applee Brita Products Company. The plaintiff here bought Brita's entry-level water filter with an accompanying picture. That package said the filter reduces five specifically named contaminants. Contra what you heard a moment ago, the package does not say the product reduces these five and more. The front label says that it reduces chlorine, mercury, copper, and more, and explicitly points readers to the back panel for additional information. There on the back panel, not under a QR code, not on the internet, it says the five chemicals explicitly, chlorine, mercury, copper, cadmium, and zinc. That's all right there on the box. There's no dispute that product does what it says. Independent standard setting bodies have certified it as reducing those five named contaminants to EPA acceptable levels. The package doesn't say that the product reduces any other contaminant besides the listed five, still less that it completely removes everything. Yet that's how this plaintiff purports to have understood the label. Below his main theory was affirmative misrepresentation. The district court rightly dismissed that theory. It held that no reasonable consumer could perceive what this plaintiff perceived from the product's label. And that holding has not been appealed. That's critical. The plaintiff has not appealed the holding that given what this label says, reasonable consumers could not expect complete expungement of all contaminants. That is the unappealed law of the case. What remains is this omissions theory, that Prita still somehow deceives consumers by failing to exclude an express disclaimer that it doesn't do what the district court already held reasonable people don't think it does. That theory fails for multiple reasons. I'd like to focus on reasonable consumer and then duty. The reasonable consumer analysis here is simple. Again, the district court held that the express statements on the package already make clear the limits of what the filter does. Counsel, I'm sorry to interrupt, but the district court didn't address the material omissions theory that the appellant is bringing before us today, right? That's not correct, Your Honor. There was a short discussion of it. What the district court held was given that reasonable consumers would not be confused about what's on the label, no omission is necessary to correct deception. So you're right. There's another branch of that theory, which is you have to warn someone, regardless of whether there was a misleading affirmative statement of some sort of safety hazard or a defect in the central functioning of the product. That wasn't addressed at all, right, by the district court? Your Honor, let's be clear. There never is an obligation to warn if there is no deception absent the warning, okay? So you are correct. There are two situations where there is a duty to disclose. One is where it's necessary to correct a false affirmative statement. One is the test, the Hobson test, which we'll talk about. But regardless of those tests, if a disclosure is not necessary to correct deception, if there would be no deception absent a disclosure, then the disclosure is futile, it's unnecessary, it's superfluous. So that's what the district court held. Right, and that's fine, I think the district court held. But again, apart from that, under the law, it appears to me that there is a duty to warn of a defect. Not to correct any misstatement, but a duty to warn of a defect, whether it be a defect in the central functioning or defect inherent in the safety hazards that the product contains. And that, I don't think that, I don't see it in the opinion. Well, let's go to that. But again, I would say that if reasonable, the defect here is that the product doesn't do X, Y, and Z, okay? It's not that this product will catch fire. I agree with you that if, there could be an independent duty to disclose that. But this is a unique case in that the supposed defect is just the inverse of what is said already on the label. The defect is, we don't do Y and Z. It says on the label, we do X and only X. So this is a unique case where you don't need to go through that whole duty to disclose analysis because it can't possibly deceive to not disclose what the product doesn't do. But let's talk about duty to disclose. There are two types of defects that can trigger a disclosure duty. An unreasonable safety hazard defect and a central function defect that renders the product incapable of use by any consumer. There's no unreasonable safety hazard defect here. In every single case where courts have found such a defect, the product created a new dangerous condition that didn't exist before. A dishwasher that catches fire or a car whose engine explodes. All of plaintiff's cases are of that form. Here, by contrast, the only alleged safety hazard is the background condition of tap water. Plaintiff has been exposed to that purported hazard his entire life. So have we all. I'm exposing myself to it right now. Plaintiff can't allege that Brita's filter created that hazard, let alone made it any worse. To the contrary, counsel just admitted a moment ago that it makes that risk better. It reduces that risk. No case has ever found an unreasonable safety hazard defect where the relevant risk pre-existed the product and indeed the product reduces that risk. In his reply brief, the best plaintiff could come up with was a case called Sloan versus General Motors. But I read that case and that case involves a car with an oil defect that causes the engine to shut down and catch fire. That merely proves Brita's point. A car crash or an auto fire isn't a background risk of life, which people would face anyway, even if they never bought a car. Tap water is. Separately, the complaint doesn't plausibly allege that the risk of drinking L.A. tap water rises to the level of what case law recognizes as unreasonable. Take this court's decision in plum baby food. In that case, the defendant was selling baby food with toxic heavy metals in it. But this court found no unreasonable safety hazard requiring disclosure. For one thing, heavy metal contamination was widespread in the environment, so it wasn't something wholly abnormal. And for another thing, none of the plaintiffs in that case alleged their children had gotten sick. This case is even weaker than that. Here, as we note in our brief, regulators at every level of government say that plaintiff's tap water is safe. Indeed, L.A. Department of Water and Power says that it's among the best anywhere and that's even before it's been run through a Brita filter. But isn't that a question of fact, whether tap water is safe now? And as I understand your friend's theory on the other side, that Brita's labeling and Brita's product gives the impression that it would ameliorate these hazards associated with tap water. And if that's not true, then there's a duty to warn that's created. So Brita's not creating the unsafe background condition, right? But Brita is promising on their theory to ameliorate that adverse background condition. And if it's not doing so sufficiently, then Brita has the obligation to warn. Your Honor, Brita is promising to reduce five specific chemicals to the levels that it says on its packaging that it will reduce. There is no dispute about that. It doesn't say anywhere that it will remove them all. It doesn't say anywhere that it will reduce every chemical. So that's just something that plaintiff unreasonably leaped to. Reasonable consumers could not, and this is not challenged. This is the affirmative misrepresentations holding that Judge Gee reached below and he has not challenged. She held that reasonable consumers would look at these express statements on the label and understand this product reduces five chemicals and no more. That is law of the case. So maybe in another case, this court could explore when there's an obligation to disclose, but not when there is an unappealed holding that reasonable consumers understand what this product does and doesn't do. I'd like to touch on the central function test now. In Hodgson, this court held that to have a central function defect, the product must be so broken that it's incapable of use by any consumer. That's not this case. The filter does exactly what the label says it will. That might not satisfy Mr. Brown, but it's perfectly satisfactory for others. For example, many people use this entry level filter to reduce the taste of chlorine in their water. That's right there in the complaint. One of the advertising claims is better tasting water. And it says on the back, reduces chlorine, parentheses, taste and odor. Those people don't care about uranium. They just want their water to taste better. This filter isn't incapable of use by those consumers or by many consumers who are satisfied with an entry level filter. Plaintiff argues in his reply brief that for a central function defect, there need not be a complete loss of utility and that all that's required is that the defect somehow relate to the product's central function. That is wrong. This court rejected that exact argument in Knowles versus Aris International. The site is 847, Federal Appendix 512 at footnote 1. Does BRITA offer other filters, like not entry level, that actually reduce some of the other contaminants that Mr. Brown is talking about? Yes, Judge Wardlaw. Thank you for asking that. That's one of the contextual inferences of the type that you wrote about in Moore versus Trader Joe's. This product appears on shelves next to more expensive BRITA filters, this is all in the complaint, whose labels say they reduce far more contaminants than this one does and cost more. A reasonable shopper wouldn't assume that this entry level standard filter that Mr. Brown paid $15 for at a grocery store does everything that those other more expensive products that list 15 or 20 or 30 contaminants on their labels do and then even more beside that. That is a contextual inference that I think is fair to make, especially when all those labels are pled in the complaint. Indeed, one of the false statements that Judge Gee considered below and rejected was of the elite filter reduces three times more contaminants than the entry level filter. So if that is a statement being made of these products, this plaintiff must know that these products may filter different numbers of contaminants and that the entry level filter doesn't reduce everything. That's just basic logic. Getting back to duty to disclose. Again, this plaintiff has not alleged that whatever the limitations of this product render it unusable to every consumer and this plaintiff has not alleged that an unreasonable safety hazard. Again, the risk, the test is not any safety hazard, it has to be unreasonable and as Williams versus Yamaha Motors held and as this court held in Plum Baby Food, safety hazards that are widely known, that are not completely expected, that are not freakish accidents don't count. In Plum Baby Food, which again involved vulnerable children eating baby food containing heavy metals, the court said that heavy metals are ubiquitous in our environment. So that's not the kind of unreasonable safety hazard that you'd have to disclose, like an exploding washing machine. Here, look at paragraph 24 of the complaint. It alleges that arsenic is, quote, naturally found in the earth's crust and is widely distributed throughout the environment in the air, water, and land. It also alleges that no segment of our society can escape exposure to PFAS. These kinds of things are just what this court looked at in Plum Baby Food and said, perhaps these are risks, you know, perhaps these are things that consumers wouldn't want, but they don't rise to the level of an unreasonable safety hazard under the narrow and specific duty to disclose theory. And that's important because if you open up the disclosure duty to anything a consumer might care about, your product labels would look like stock prospectuses. There needs to be clear and narrow rules about the specific things that have to be affirmatively disclosed so that manufacturers know what needs to go on their labels and the labels don't get overrun with warnings that will obscure the warnings that are truly important. Counsel, why isn't it a question of fact as to whether a safety hazard is reasonable or unreasonable? So, in case after case, this court has resolved this at the pleading stage. Williams versus Yamaha was absolved at the pleading stage. The Aris versus Knowles decision from this court was resolved at the pleading stage. The Cali Bamboo case, this court resolved it at the pleading stage. In all these decisions, affirming the district court's dismissal. And the reason why it isn't a question of fact is because, first of all, we don't create the hazard. That is just, there's never been any case where a product that reduces hazard was held to have an unreasonable safety hazard defect. So, that's not a question of fact. That's just unprecedented. And even then, drinking tap water that we're all exposed to all the time every day of our life cannot rise to the level of unreasonable in the meaning of Williams versus Yamaha and plum baby food. There might be other cases where it's a fact issue. It's not here. Finally, even if they did allege a safety hazard that qualified or a central function defect, they'd need to allege exclusive knowledge. That's the other half of the duty to disclose test. And they can't do that here. As Judge Gee held below, Brita's own product labels already communicate to reasonable consumers what the products do and don't do. So, the supposed defect, right, we don't reduce uranium, is already something that reasonable consumers know just from reading the labels. It's also... Counselor, your time is running out. I have one last question about amendment of the complaint. So, why shouldn't the district court give plaintiff another chance at this, another shot at this? Two reasons. One, the plaintiff never filed a proper request below. All he did was at the last sentence of his opposition brief said, if the court dismisses, we want to amend. Didn't specify what they'd say. Didn't specify what they'd add. This court in Fuscares and courts across the country have held that's not enough. Also, even now, in any of the briefing, this plaintiff has not said what he could or would add. And it's clear there's nothing he could add, given the unappealed reasonable consumer holding establishes as law of the case that consumers already know what the products do and don't do. Given he can't possibly allege exclusive knowledge because it's in our performance data sheets, it's on our website, this is all undisputed, it would be futile to allow amendment. Thank you. Thank you, Counselor. I shall endeavor not to use all of my remaining time. A few points, Your Honor, just in response to my friend's comments. First, this is on de novo review. This court's not bound by the district court's decisions, even if they're not appealed here. You have complete plenary review of the record and all aspects to it in deciding this complete omission theory that, Your Honor was correct, is not addressed in the district court's decision at all. Partial omission is, but not complete omission. My friend addressed the Sloan v. GM case, the one involving the low fuel, low oil level warning in cars. And just to be clear, any internal combustion engine that uses oil as a lubricant, if you let it run all the way down, it will catch fire eventually or seize. I mean, that's just the inherent risk of an internal combustion engine. And so the oil level warning didn't, dealt with an inherent risk and it made it less risky if it was working functionally and it wasn't. And that was enough to create a safety risk there. And so that's similar here, the spread of filter product and the reasonable consumer would expect this product to make their tap water safer. And it does to some extent, but not to the extent the reasonable consumer would expect. And so we need a warning here. The question of central... I want to ask you quickly, if you were given leave to amend, what would you, what could you add to bolster this complaint? Well, Your Honor, we've referenced three things in our briefing. We could allege further particularity regarding contamination levels in our client's tap water in case the court's concerned about the safety aspect of what risk of exposure is actually present here. Although I frankly think that we've alleged quite a bit there. For example, my friend referenced arsenic. Arsenic is common in the environment, but it's not necessarily common in tap water. And the complaint specifically alleges that Los Angeles's tap water has been tested and found to have five times the minimum or the maximum exposure level for arsenic, five times. And so tap water in Los Angeles where our client lives is especially risky. And arsenic, I think it's table five, exhibit five of the complaint, Your Honor, has the full table showing all of the contaminants and whether the products that issue here filter them. Arsenic is not filtered by any of them. Counsel, what about the argument on the other side being made that Brita is not creating that background condition, right? And so therefore it doesn't have a duty to warn. And if we were to hold that, that would be a very novel holding, novel proposition. I don't think it's novel, Your Honor, in the product liability side of things. And here we have exposure to toxic chemicals. So the concerns that have animated other courts in a reluctance to bring product liability into this consumer space, I think that's mitigated here because we are dealing with something that is indisputably dangerous. It's not a danger created by the Brita product. No, Your Honor, but it's a danger inherent to what the filtration and the risks that they're trying to resolve by using water filtration products. What's your best case for that proposition? Yes, Your Honor. Just give me one second to pull it up here. I apologize for the time delay. Hi, I'm sorry, Your Honor. I will confess that I don't want to waste much of your time by digging. We'll review the briefs again. We do cite them in our reply brief. I do remember specifically this issue being addressed there. And forgive me again for not having that on hand. I want to address the central functioning aspect of this. I think this court's decision in Hodson is pretty clear that when it said completely incapable of use, it was responding to what the plaintiff there had alleged. He didn't have a use for this chocolate because it was made using slave labor in the supply chain. But chocolate was not incapable of use, and that was the rejoinder to that. But the actual analysis of the opinion focuses on things that are impacting central utility. Now, here we have a filter that the reasonable consumer looks at and expects based on any number of factors, including what is specifically stated on the label, is going to make my tap water safer and healthier. That's the central function. Does this product filter my tap water and make it healthier? And as we've alleged, we think without a warning, a consumer is going to be deceived about whether it does. So I see my time is up, unless you have a question, Your Honor. No, I don't. Thank you, Your Honor. Thank you, counsel. Brown v. The Breeding Products Company is submitted. This session, of course, is adjourned for today, and the panel is going to conference briefly about these cases, and then Judge DeAlba and Judge Chun will come back out and talk to the students from USC. I'm sorry that I'm not able to participate today. I have another commitment elsewhere. So thank you very much, counsel. All rise. This court for this session stands adjourned.
judges: WARDLAW, ALBA, TUNG